# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DARYL WARREN, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | No. 4:16 CV 1499 CDP |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

Daryl Warren seeks to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Warren was convicted by a jury of conspiring to possess with intent to distribute cocaine (Count III), possessing firearms in furtherance of a drug trafficking crime (Count IV), and being a felon in possession of firearms (Count V). Case No. 4:13 CR 221 CDP. Warren was sentenced to 151 months imprisonment on Count III and 120 months on Count V, to be served concurrently, and 60 months imprisonment on Count IV, to be served consecutively, for an aggregate sentence of 211 months imprisonment. Warren appealed, and the Eighth Circuit Court of Appeals affirmed his conviction and sentence. *United States v. Warren*, 788 F.3d 805 (8th Cir. 2015). The United States Supreme Court denied Warren's certiorari on October 13, 2015.

Warren then filed this § 2255 motion *pro se*, raising the following claims:

1) Counsel was ineffective for failing to object to evidence that resulted in a "fatal variance" to the indictment;

2) Counsel was ineffective for failing to raise "targeting, racial profiling and outrageous conduct" during pretrial proceedings; and

3) Counsel was ineffective for failing to challenge "the applicability of 924(c) as a firearm used in furtherance of a drug trafficking crime."

Warren's ineffective assistance of counsel claims are conclusively refuted by the trial record. The evidence against him was very strong, as set forth in great detail in the appellate opinion affirming his conviction and sentence. I will deny Warren's motion without an evidentiary hearing for the reasons that follow.

**Background Facts**

The Eighth Circuit Court of Appeals summarized the evidence against Warren and his co-defendants as follows:

> An undercover agent working for the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) recruited Daryl Warren and two other men, Michael Twitty and Robert Washington, to rob a home in St. Louis reportedly being used to store cocaine. After Warren, Twitty, and Washington had agreed to the robbery, they were arrested and charged with various drug and firearm offenses. A jury convicted Warren of conspiring to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, possessing a firearm in furtherance of a drug trafficking conspiracy, in violation of 18 U.S.C. § 924(c), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). The district court sentenced Warren to 211 months imprisonment followed by a five year term of supervised release. Warren appeals, raising several arguments related to the investigation, the trial evidence, and his sentence. We affirm.
>
> In 2009 the ATF implemented Operation Gideon, a series of undercover sting operations designed to arrest criminals who were robbing locations where drugs were stored. Rather than planting drugs in such locations with

the expectation of making arrests, the ATF developed an alternative technique. Undercover ATF agents would describe a fictitious location to suspects and support plans for gaining access to it. When suspects were later about to carry out such a plan, they were arrested. The ATF used this technique in St. Louis, Missouri from April to June 2013 following increased violence in drug related robberies.

The investigation and arrest of Warren involved two confidential informants and Richard Zayas, an undercover ATF agent. On May 21, 2013 the confidential informants purchased an ounce of cocaine from Warren's cousin, Robert Washington. The informants subsequently introduced Washington to Zayas, who purchased another ounce of cocaine from Washington. During this purchase, Zayas claimed that he was a disgruntled drug courier looking for a crew to help him rob a Mexican drug cartel of large amounts of cocaine. Washington said that he knew people who were "involved in this type of activity" and agreed to organize a meeting with them at a future date.

On June 3, 2013 Washington introduced Zayas to Warren and Michael Twitty in a grocery store parking lot. Zayas told them his cover story: he was a cocaine courier for a group of Mexican drug dealers and was unhappy with the pay he was receiving. He was interested in robbing the Mexican drug dealers to make up for his low pay. Zayas claimed that a few times each month he would receive a call from Mexican dealers informing him that they had some drugs ready for transportation at a particular house. He would have a few minutes to pick up the drugs or they would be moved to a new location. They told him that on entry to the house he would see two Mexican men, one of whom would be carrying a pistol. The other man would go to a back room and retrieve five to six kilograms of cocaine to give to Zayas, then tell him where to make the delivery. Zayas claimed that each time he went to the house, he could see anywhere from 20 to 22 kilograms of cocaine stored in a back room. As Zayas finished telling the story, Warren declared that "they could handle the robbery" and he had "one more guy" who would help out.

The group convened again the next day. On behalf of "his people," Warren asked Zayas where the house was located, what it looked like, how many guards would be present outside, and whether there would be only one man guarding the cocaine in the back room. After Zayas answered the questions, Warren agreed to use a "trap car" with a secret back seat compartment to

transport the cocaine from the house. One of the confidential informants asked whether there would be any problems "unloading" the cocaine, and Warren replied, "nah, nah, man we good." The group then discussed who would enter the house first and who would follow behind, and everyone agreed to commit the robbery the following afternoon. When asked for his final thoughts on the plan, Warren replied, "I think it's pretty good. It's gonna be like a little shootout though."

When they gathered on June 5, 2013, Warren told Zayas that a fourth man would meet them at the cocaine house and that he would instruct that man after they arrived. Although Zayas wanted to meet the fourth man before the robbery to ensure he understood the plan, Warren emphasized, "I'm the orchestrator. I'm the orchestrator. [I will tell] him know what to do." Warren also declared that if anything went wrong at the house, he "didn't need [his] people taking no fall for nothing, if you know what I'm saying." Zayas then showed Warren, Twitty, and Washington how to operate the hidden compartment of the "trap car." As he opened the compartment, ATF officers emerged from a nearby parking lot and arrested them. The officers searched Warren' s car and found a semiautomatic pistol and an assault rifle, both loaded. Two pairs of gloves, a red bandana, and two knives were found in the glove compartment.

A grand jury returned a five count indictment against Warren, Washington, and Twitty. Warren was charged in three counts for conspiring to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and § 846, possessing a firearm in furtherance of a drug trafficking conspiracy, in violation of 18 U.S.C. § 924(c), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). While Washington and Twitty pled guilty, Warren proceeded to trial . . . . While Warren did not testify at trial, Zayas and the two confidential informants testified about his involvement in the conspiracy to rob the home . . . The jury convicted Warren of all counts.

*Warren*, 788 F.3d at 807-10.

## Discussion

### A. No Evidentiary Hearing is Required

The records before me conclusively demonstrate that Warren has no right to relief. I will not hold an evidentiary hearing on this matter. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). "No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Id.* (internal quotation marks and citations omitted). The record here conclusively refutes the claims, so I will not hold an evidentiary hearing.

### B. Warren Did Not Receive Ineffective Assistance of Counsel

Warren brings claims of ineffective assistance of trial counsel. The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To state a claim for ineffective assistance of counsel, Warren must prove two elements of the claim. First, he "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In considering whether this showing has been accomplished, "judicial

scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id.* Second, Warren "must show that the deficient performance prejudiced the defense." *Id.* at 687. This requires him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The court need not address both components if the movant makes an insufficient showing on one of the prongs. *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995). Under these standards, Warren did not receive ineffective assistance from his attorney.

In his first ground for relief, Warren alleges that his attorney was constitutionally ineffective because he failed to "object to evidence presented that proved facts which were materially different from those alleged in the complaint." According to Warren, "[t]here was no evidence of a drug conspiracy" because "there was absolutely no evidence of intent to traffic in drugs." Warren's argument is foreclosed by the Eighth Circuit as follows:

> The evidence at trial showed that Warren had expected to steal at least 15 kilograms of cocaine and that he had the ability to distribute that amount. After he learned that the targeted location contained 20 to 22 kilograms of cocaine, an undercover agent asked him whether there would be any problems "unloading" the drugs. Warren replied, "nah, nah, man we good." Given this unequivocal statement, Warren cannot show that he had neither the intent nor the ability to distribute at least 15 kilograms of cocaine. *See Ruiz*, 446 F.3d at 775–76; see also *Searcy*, 284 F.3d at 942–43. Nor can he

6

> show that he was predisposed to deal only in small quantities of cocaine. As
> his prior convictions show, Warren was a convicted drug dealer who was
> released from prison only five years before the conduct at issue here. *See
> United States v. Booker*, 639 F.3d 1115, 1119 (8th Cir. 2011); *United States
> v. Hunt*, 171 F.3d 1192, 1196 (8th Cir. 1999).

*Warren,* 788 F.3d 805 at 813. The issue of whether there was evidence of Warren's intent to traffic in the drugs he intended to rob was decided adversely to Warren at trial and on direct appeal and cannot be relitigated here. Moreover, no "fatal variance" occurred because the indictment "fully and fairly apprised the defendant of the charges he or she must meet at trial," *United States v. Thomas*, 791 F.3d 889, 897 (8th Cir. 2015), including the drug trafficking charge. Counsel cannot be ineffective for failing to raise a meritless argument, so Warren's claim fails as a matter of law. Ground 1 of Warren's § 2255 motion is denied.

In Ground 2, Warren alleges that his attorney was ineffective for failing to challenge the government's case based on racial targeting and profiling and outrageous government conduct. "The defense of outrageous government conduct is similar to, although different from, the defense of entrapment. Whereas the defense of entrapment focuses on the predisposition of the defendant to commit the crime, the defense of outrageous government conduct focuses on the government's actions." *United States v. Williams*, 720 F.3d 674, 685–86 (8th Cir. 2013) (quoting *United States v. Hunt*, 171 F.3d 1192, 1195 (8th Cir. 1999)). "[T]he level of outrageousness needed to prove a due process violation is quite high, and the

government's conduct must shock the conscience of the court." *United States v. King*, 351 F.3d 859, 867 (8th Cir. 2003) (citation and internal quotation marks omitted); *United States v. Bugh*, 701 F.3d 888, 894 (8th Cir. 2012) ("Outrageous Government conduct requires dismissal of a charge 'only if it falls within the narrow band of the most intolerable government conduct.'" (quoting *United States v. Morse*, 613 F.3d 787, 792–93 (8th Cir. 2010))); *Hunt*, 171 F.3d at 1195 ("[G]overnment agents 'may go a long way in concert with the individual in question without being deemed to have acted so outrageously as to violate due process.'" (quoting *United States v. Kummer*, 15 F.3d 1455, 1460 (8th Cir. 1994))).

Given this high level of proof, appellate courts have consistently rejected the argument that this type of reverse-sting stash house operation amounted to outrageous government conduct. *See* e.g., *United States v. Combs*, 827 F.3d 790 (8th Cir. 2016) (rejecting defendant's argument that government's conduct in reverse-sting stash house operation violated his rights under Due Process Clause); *United States v. Dennis*, 826 F.3d 683 (3rd Cir. 2016); *United States v. Hare*, 820 F.3d 93, 102-04 (4th Cir. 2016); *United States v. Flores*, 650 Fed. Appx. 362 (9th Cir. 2016). To support his outrageous government conduct argument, Warren relies on arguments[1] recently made in Northern District of Illinois cases (*United*

---

[1] Warren incorrectly characterizes the defendants' expert report submitted in support of the defendants' motion to dismiss the indictment in those cases as a report commissioned by the district court in Illinois. Because respondent does not object and the arguments relate back to his

*States v. Abraham Brown, et al.*, Case No. 1:12 CR 632, and *United States v. Antonio Williams, et al.*, Case No. 1: 12 CR 887). However, in those cases the district court rejected defendants' arguments that the government engaged in outrageous conduct in violation of the Due Process Clause of the Fifth Amendment. *United States v. Brown*, 299 F. Supp. 3d 976 (N.D. Ill. 2018). In light of these authorities and in the absence of any specific evidence of outrageous government conduct in this case, counsel cannot be found ineffective for failing to raise this meritless argument. Accordingly, Ground 2 of Warren's § 2255 motion is denied.

In Ground 3, Warren argues that his attorney was ineffective for failing to challenge the applicability of 18 U.S.C. § 924(c) because "there was no drug trafficking crime." Warren's argument that there was no evidence of a drug trafficking crime fails for the reasons set out in Ground 1. Moreover, counsel repeatedly argued at trial and sentencing that Warren could not be convicted of the charged offenses because the "situation was basically fictitious." [Doc. # 256 at 2-3 in Case No. 4: 13 CR 221]. I rejected counsel's argument, and counsel cannot be found to be ineffective for failing to win a meritless argument. To the extent that Warren is attempting to argue that he did not possess a firearm, that argument is

---

timely raised claim of ineffective assistance of counsel, I will grant the motion for leave to file a supplemental pleading [13] and consider Warren's arguments as supplemental to his existing claim made in Ground 2 of his motion.

foreclosed by the evidence presented at trial, the jury verdict, and the Eighth Circuit, which found that "officers searched Warren's car and found a semiautomatic pistol and an assault rifle, both loaded." *Warren*, 788 F.3d at 809. Ground 3 of his § 2255 motion will be denied.

## C. Leave to Amend is Denied

Warren filed a "notice of supplementary brief" on April 6, 2018 and another on January 14, 2019. Unlike his supplemental brief filed in May of 2017, however, these filings attach an amended § 2255 motion and purport to raise new claims not previously asserted in his timely § 2255 motion. Warren never filed a motion seeking leave to amend his§ 2255 motion, and the motions are untimely under the one-year statute of limitations. For these reasons, I will deny Warren's notices to supplement and do not consider these filings as part of his § 2255 motion.

## D. I Will Not Issue a Certificate of Appealability

As Warren has not made a substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that Daryl Warren's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 [1] is denied.

**IT IS FURTHER ORDERED** that the motion for leave to file a supplemental pleading [13] is granted.

**IT IS FURTHER ORDERED** that the "notice of supplementary brief" [26] and "notice to supplement" [28] are denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Warren has not made a substantial showing of the denial of a federal constitutional right.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 16th day of January, 2019.